**NOT FOR PUBLICATION**                                    [Docket Entry No. 1]

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

```
                                    :
POWER PLANT ENTERTAINMENT,          :
LLC, et al                          :   Civ. No. 09-4766 (RMB)
                                    :
            Appellants              :   OPINION
                                    :
      v.                            :
                                    :
TCI 2 HOLDINGS, LLC, et al.,        :
                                    :
            Appellees.              :
                                    :
```

Appearances:

Warren A. Usatine, Esquire
Felice R. Yudkin, Esquire
Cole, Schotz, Meisel, Forman & Leonard, PA
25 Main Street
Hackensack, New Jersey 07601
(201) 525-6233
         Attorneys for Appellants

Charles A. Stanziale, Jr., Esquire
Jeffrey T. Testa, Esquire
Joseph E. Lubertazzi, Jr., Esquire
Lisa Bonsall, Esquire
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444
         Attorneys for Appellees

Jeffrey M. Sponder, Esquire
Office of the United States Trustee
One Newark Center, Suite 2100
Newark, New Jersey 07102
973-645-3014
         United States Trustee

**BUMB**, United States District Judge

This is an appeal by Power Plant Entertainment, LLC, The Cordish Company, Native American Development, LLC, and Joseph Weinberg (the "Appellants" or "PPG") from a ruling by the Honorable Judith H. Wizmur, United States Bankruptcy Judge. Judge Wizmur ruled that Appellants' claim for attorneys' fees under the Florida Deceptive Unfair Trade Practice Act ("FDUTPA") was a pre-petition claim and therefore barred by the automatic stay provision of the Bankruptcy Reform Act of 1978 (the "Bankruptcy Code"), 11 U.S.C. § 362(a)(1).

Both parties agree that this case is governed by the Third Circuit's decision in Avellino & Bienes v. M. Frenville Co., Inc.(In re M. Frenville Co., Inc.), 744 F.2d 332 (3d. Cir. 1984), cert. denied, 469 U.S. 1160 (1985) ("Frenville"), which "held that in most circumstances a 'claim' arises for bankruptcy purposes at the same time the underlying state law cause of action accrues." Jones v. Chemetron Corp., 212 F.3d 199, 206 (3d Cir. 2000). Appellants urge this Court to reverse the Bankruptcy Court on the grounds that appellants have not obtained a "right to payment" because the elements for FDUTPA attorneys' fees do not ripen until the underlying state action, in its entirety, and any appeals, have concluded. Because the underlying Florida litigation is still ongoing, they argue, the Bankruptcy Court erred. The appellees (defined below) counter that PPG had a

2

claim once the plaintiff/debtor instituted a pre-petition suit alleging a FDUTPA violation against PPG and PPG pled a claim for attorneys' fees under FDUPTA in its answer.  Most certainly, appellees argue, once PPG obtained summary judgment in its favor on the FDUPTA claim, which occurred pre-petition, PPG had a claim under the Bankruptcy Code.

I.   **FACTUAL BACKGROUND**

   A.   **The Bankruptcy Petitions**

The material facts pertinent to this appeal are not in dispute.  On February 17, 2009 (the "Filing Date"), Trump Entertainment Resorts Development Company, LLC, which formerly was known as Trump Hotels & Casinos Resorts Development Company, LLC ("TER Development"), along with nine affiliated companies (collectively the "Debtors" or "Appellees"), filed voluntary petitions for relief under the Bankruptcy Code, in the Bankruptcy Court.  The Debtors own and operate three casino hotel properties in Atlantic City, New Jersey.

   B.   **The Florida Litigation**

Several years prior to the bankruptcy filing, on December 30, 2004, TER Development filed a Florida lawsuit against PPG.  In that suit, TER Development alleged that PPG fraudulently obtained agreements with the Seminole Indian Tribe of Florida to develop hotels and casinos in Florida under the false pretense that they were acting for TER Development.  TER Development

asserted causes of action for fraud, breach of fiduciary duty, conspiracy, violation of FDUTPA and interference with prospective business relationship.  The Complaint requested unspecified damages resulting from TER Development's lost profits from its deal with the Seminole Indian Tribe.

On June 6, 2005, PPG filed its Answer and Affirmative Defenses to the Complaint ("Answer").  Significantly, in its Answer PPG pled a claim for attorneys' fees under FDUTPA as follows:

> WHEREFORE, Power Plant requests that the Court dismiss the Complaint with prejudice, that it be awarded its costs and <u>attorney's fees of the suit pursuant to Florida Statute § 501.2105</u>, and that the Court award such other relief as may be just and proper.

<u>Id</u>. at 12 (emphasis added).

On April 17, 2008, the Florida Court granted summary judgment in favor of PPG on four counts of the Complaint, including the FDUTPA claim.  The Court found that material issues of fact existed, however, on the counts for fraud and misrepresentation as to the individual defendant and on the civil conspiracy count as to all of the defendants.

  **C. <u>PPG's Motion for Relief from the Stay</u>**

On June 25, 2009, PPG filed a "Motion for Relief from the Automatic Stay Pursuant to Section 362(d) of the Bankruptcy Code or, in the Alternative, for a Determination That Section 362(a) of the Bankruptcy Code is Not Applicable to the Assertion of Claims Against the Debtors and Their Officers" (the "Motion").  Specifically, PPG sought relief from the automatic stay pursuant

4

to Section 362(d)(2) of the Bankruptcy Code to pursue its claims for attorneys' fees based under FDUTPA, abuse of process and malicious prosecution or, in the alternative, an adjudication that these claims were not pre-petition claims stayed by the bankruptcy filing.

The Honorable Judith H. Wizmur granted, in part, and denied, in part, the Motion. In pertinent part, the Bankruptcy Court held that PPG's claim for attorneys' fees under FDUTPA was a pre-petition claim subject to the automatic stay.[1]  This ruling is the subject of the within appeal.

## II.  LEGAL DISCUSSION

A District Court has jurisdiction to hear appeals of orders of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1).  This Court reviews the Bankruptcy Court's "legal determinations de novo, its factual findings for clear error, and its exercise of discretion for abuse thereof."  In re American Pad & Paper Co., 478 F.3d 546, 551 (3d Cir. 2007); see also Fed. R. Bankr. P. 8013.  As this appeal presents only pure questions of law, the Court will exercise plenary review.  In re Montgomery Ward Holding Corp., 268 F.3d 205, 208 (3d Cir. 2001).

---

[1] The Bankruptcy Court agreed with PPG that the automatic stay did not apply to its defense of the Florida Litigation.  The Bankruptcy Court also held that PPG's abuse of process claim was stayed but its malicious prosecution claim was not impacted by the automatic stay.  These rulings are not the subject of this appeal.

5

A.  **Automatic Stay**

The automatic stay provision of the Bankruptcy Code, Section 362, provides that a petition operates as a stay of:

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or *could have been commenced before* the commencement of the case under this title, or to recover a claim against the debtor that *arose before* the commencement of the case under this title;

11 U.S.C. § 362(a)(1) (emphasis added).  Section 362 operates to stay any proceeding that could have been commenced or claim that arose before the filing of the bankruptcy petition. See Frenville, 744 F.2d at 335 ("Section 362(a)(1). . . refers to "proceedings" and "claims" against, not acts done by, the debtor".).  Section 362 does not bar a proceeding or claim arising post-petition.  Id.

B.  **"Claim" Generally**

The Bankruptcy Code defines a "claim" as a

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured;
> . . .

11 U.S.C. § 101(5).  Because Congress intended "that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy

6

case," H.R.Rep. No. 595, 95th Cong., 2d Sess. 309, reprinted in 1978 U.S.Code Cong. & Ad.News 5963, 6266; see also S.Rep. No. 989, 95th Cong., 2d Sess. 21-22, reprinted in 1978 U.S.Code Cong. & Ad.News 5785, 5807-08, the definition of a "claim" is quite broad.  See Frenville, 744 F.2d at 336; In re Continental Airlines, 125 F.3d 120, 132 (3d Cir. 1997) ("The term 'claim' as defined in the bankruptcy code is construed broadly to permit debtors to meet all of their legal obligations in bankruptcy and to enable holders of claims to participate in the bankruptcy proceedings."), cert. denied sub nom., LLP Claimants v. Continental Airlines, 522 U.S. 1114 (1998).  See also Ohio v. Kovacs, 469 U.S. 274, 279 (1985) ("Congress desired a broad definition of claim.").

   Thus, as the plain language provides, included in the definition of "claim" are those claims considered "contingent."  A contingent claim is one "which becomes due only on the occurrence of a future event."  Frenville, 744 F.2d at 336 n.7 (citing In re Dill, 30 B.R. 546, 549 (Bankr. 9th Cir. 1983)); Matter of Mattera, 203 B.R. 565, 571 (Bankr. D. N. J. 1997)(citing Frenville, 744 F.2d at 336 n. 7) ("Turning to the plain meaning of the adjectives describing the scope of the right to payment, we apply the Third Circuit formulation that a claim is contingent when it becomes due only on the occurrence of a future event."));

7

cf. In re Meyers, 344 B.R. 136, 144 (E. D. Pa. 2005) ("because the state court had already announced its intention to rule against Appellant-debtor on August 11, and the only thing left for it to do on August 13 was to enter judgment, the claim would seem to be no longer 'contingent' when Appellant-debtor filed for bankruptcy on August 12"), aff'd, 491 F.3d 120 (3d Cir. 2007).  An unmatured and contingent claim is subject to the automatic stay.  See 11 U.S.C. § 362(a)(1).

    C.  **"Claim" Determined by State Law**

"[T]he existence of a valid claim depends on:  (1) whether the claimant possessed a right to payment; and (2) when that right arose."  In re Remington Rand Corp., 836 F.2d 825, 830 (3d Cir. 1988) (citing Frenville, 744 F.2s at 336).  Therefore, in order to answer the threshold question presented here – did PPG hold a pre-petition "claim" or a "right to payment" for its attorneys' fees under FDUTPA? – the Court must look to Florida law.  Vanston Bondholders Protective Committee v. Green, 329 U.S. 156, 161 (1946)(whether or not a right to payment exists "is to be determined by reference to state law.").  See also Chemetron Corp., 212 F.3d at 206 (citing Frenville, 744 F.2d at 337) ("in most circumstances a 'claim' arises for bankruptcy purposes at the same time the underlying state law cause of action accrues").

Under Florida law, a prevailing party in a case involving a FDUTPA violation may receive attorneys' fees under certain conditions. Section 501.2105 of the Florida Statutes Annotated provides, in pertinent part:

> (1) In any civil litigation resulting from any act or practice involving a violation of this part, except as provided in subsection (5), the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, may receive his or her reasonable attorney's fees and costs from the nonprevailing party.

Fla. Stat. § 501.2105 (2009).

Thus, in a case that involves an allegation of a FDUTPA violation, a prevailing party may receive attorneys' fees "after judgment in the trial court" and "exhaustion of all appeals, if any." An award of attorneys' fees under the FDUTPA statute, however, is discretionary. <u>Poveda v. Popular Mortgage Servicing, Inc.</u>, 08-21822, 2009 WL 361093, at *3 (S.D. Fla. Feb. 9, 2009) (citing <u>Humane Soc. of Broward County, Inc. v. Florida Humane Soc.</u>, 951 So.2d 966, 968 (Fla. Dist. Ct. App. 2007)); <u>Colomar v. Mercy Hospital, Inc.</u>, 05-22409, 2008 WL 4459383, at *2 (S. D. Fla. Sept. 29, 2008), <u>aff'd</u>, 335 Fed. Appx. 29 (11th Cir. 2009).

In addition to the requirements plainly set forth in the statute, the Supreme Court of Florida has imposed an additional requirement before the prevailing party may recover fees: the claim for attorneys' fees must be expressly pled. As the Florida

9

Supreme Court in <u>Stockman v. Downs</u>, 573 So.2d 835 (Fla. 1991)[2] held:

> [A] claim for attorneys' fees, <u>whether based on statute or contract</u>, must be pled.  The fundamental concern is one of notice.  Modern pleading requirements serve to notify the opposing party of the claims alleged and prevent unfair surprise.  40 Fla. Jur. 2d <u>Pleadings</u> § 2 (1982).  Raising entitlement to attorney's fees only after judgment fails to serve either of these objectives. . . A party should not have to speculate throughout the entire course of an action about what claims ultimately may be alleged against him.

<u>Id.</u> at 837-38 (emphasis added).[3]  A failure to affirmatively plead a claim for attorneys' fees will result in a waiver of such claim.  <u>Id.</u> ("we hold that a claim for attorneys' fees, whether based on statue or contract, must be pled.  Failure to do so constitutes a waiver of the claim").  See also <u>Green v. Sun Harbor Homeowners' Ass'n.</u>,

---

[2]  <u>Stockman v. Downs</u> has been superceded by Florida Rule of Civil Procedure 1.525, which directs any party seeking attorneys' fees to so move within 30 days, as opposed to moving within a "reasonable time" after final judgment is entered.  <u>See</u> <u>AmerUs Life Ins. Co. v. Lait</u>, 2 So. 3d 203, 205 (Fla. 2009).

[3]  <u>Stockman</u> has also been applied by the Florida courts to claims for attorneys' fees under statutes other than FDUTPA.  <u>See</u> <u>Great Am. Assurance Co. v. Elliott</u>, 3:09-cv-77-J-32TEM, 2009 WL 1653573, at *1 (M.D. Fla. June 10, 2009)(applying <u>Stockman</u> to attorneys' fees claim under Fla. Stat. § 627.428 pertaining to insurance cases; plaintiff effectively on notice when defendants demanded reasonable attorneys' fees in their answer and affirmative defenses); <u>see also</u> <u>Deitchman v. Bear Stearns Sec. Corp.</u>, 07-60465, 2007 WL 4592238, at *7 (S. D. Fla. Dec. 28, 2007)(applying <u>Stockman</u> to claim for attorneys' fees under Fla. Stat. § 517.211(6) pertaining to unlawful sale of securities); and <u>Smythers v. Nat'l Union Fire Ins. Co. of Pittsburgh, Penn.</u>, 931 So. 2d 227, 229-30 (Fla. Dist. Ct. 2006)(reversing fee award to defendant for failure to plead statutory basis for fees under ERISA until filing of a post-judgment motion).

730 So. 2d 1261, 1263 (Fla. 1998)("<u>Stockman</u> is to be read to hold that the failure to set forth a claim for attorney fees in a complaint, <u>answer</u> or counterclaim, if filed, constitutes a waiver")(emphasis added).

### D. <u>Analysis of the Claim Dispute</u>

Here, the Florida litigation clearly involved a FDUTPA allegation by the Debtor against PPG, thus bringing Florida Statute § 501.2105 into play. PPG responded to the FDUPTA charge by affirmatively pleading a § 501.2105 claim for attorneys' fees, as <u>Stockman</u> dictates. Prior to TER's filing of bankruptcy, PPG secured summary judgment as to the FDUPTA claim, but it could not move for the payment of attorneys' fees because the entire case had not yet concluded as required by statute.

Appellants argue that their "right to payment" will not accrue until the Florida litigation concludes and the trial court adjudicates them a "prevailing party." They aver that even though they successfully defended the FDUPTA claim, they do not have a **cause of action** for attorneys' fees under the statute until the entry of a final, non-appealable "net judgment" in its favor. Until then, they contend, they have no claim to bring. Appellants rely heavily upon <u>Heindel v. Southside Chrysler-Plymouth, Inc.</u>, 476 So.2d 266 (Fla. Dist.

11

Ct. App. 1985) ("Heindel") and its progeny.[4]  In Heindel, the District Court of Appeal reversed the lower court's judgment awarding attorneys' fees under FDUPTA because the award was made prior to the exhaustion of an appeal.  476 So.2d at 268.  The court noted, however, that fees could not be awarded where the party prevailed on the FDUPTA claim but did not otherwise allege or establish any affirmative claim for relief.  Id. at 269.  In addition, the court explained that a prevailing party must obtain a net judgment in its favor.  Id. at 270.  In other words, the party who prevailed under FDUPTA, but does not otherwise obtain a net favorable judgment as to the whole case, was not the "prevailing party" and could not recover FDUPTA attorneys' fees.  See also CrossPointe, LLC v. Integrated Computing, LLC, No. 6:03-cv-558, 2007 WL 1192021, at *4 (M.D. Fla. 2007) (to recover FDUPTA attorneys' fees, a party must be awarded

---

[4]  Because this argument, that "prevailing party" status refers to a "net judgment," rather than a favorable judgment on the sole FDUTPA count, was not apparent to the Court at the time of oral argument, the Court requested supplemental briefings on this issue.  The Court agrees with the Appellants' interpretation of Florida law:  the prevailing party must have secured a "net judgment" in its favor, not just on the FDUTPA claim alone in cases where there are additional claims.  Heindel, 476 So.2d at 270-71.  Moreover, contrary to the Debtor's unsupported argument, prevailing party status cannot be determined by comparing the number of counts on which each party receives a favorable judgment; it must be evaluated within the context of each case.  The Court further agrees with Appellants that Appellees' disregarded the Court's direction to limit briefing to the "prevailing party" issue.  Nonetheless, for reasons discussed herein, Appellants' argument that their claim for attorneys' fees will not accrue until prevailing party status is determined runs counter to the controlling Frenville decision discussed infra.

favorable judgment on FDUPTA claim and have "recovered a net judgment in the entire case"); Ghodrati v. Miami Paneling Corp., 770 So.2d 181, 183 (Fla. Dist. Ct. App. 2000)(same).

The Debtors argue that once TER Development filed a FDUTPA claim against PPG, PPG had a claim for FDUPTA fees and thus, a pre-petition claim. Alternatively, they argue, at the latest, PPG had a pre-petition claim when it obtained a judgment in its favor as to the FDUTPA claim. At that point, the claim was "at the very least" a contingent claim, Oral Argument Tr. 62:4, Dec. 15, 2009, contingent upon future events, i.e. a "net judgment" in its favor, exhaustion of appeals, if any, and adjudication of "prevailing party" status.

The parties agree that their dispute is governed by the Third Circuit's decision in Frenville where the Court confronted the issue of when the right to payment arises. In Frenville, several banks filed suit against the debtor's accounting firm alleging, inter alia, that the firm had negligently and recklessly prepared the debtor's financial statements. 744 F.2d at 333. After the suit was filed, the accounting firm sought relief from the automatic stay to file a third-party complaint to obtain indemnification or contribution from the debtor. Id. at 333-34. The bankruptcy court held the automatic stay applied because the debtor's liability, if any, resulted from its pre-petition

13

acts, that is, the preparation of allegedly false financial statements. Id. at 334.

The Third Circuit disagreed. In determining when the accounting firm had a "right to payment," that is, a claim, under the Bankruptcy Code the Court turned to New York state law. Id. at 337. Under New York law, a claim for contribution or indemnification did not mature until the accounting firm is required to make any payment. Id. However, the Court noted that New York law permitted a defendant to institute a claim against a party who may be liable to him for all or part of the claim after service of its answer. Id. Thus, under New York law, one may file a suit for indemnification or contribution before the claim is "technically ripe" "for the sake of fairness and judicial economy," so that "all parties may establish [secure] their rights and liabilities in one action." Id. (quoting Burgundy Basin Inn v. Watkins Glen Grand Prix Corp., 379 N. Y. S. 2d 873, 880 (N.Y. App. Div. 1976)). Accordingly, the Court held that once the banks instituted suit, the accounting firm had a "claim or cause of action based on indemnity or contribution against the [debtor]." Id. ("Until the banks instituted suit, however, A & B did not have any claim or cause of action based on indemnity or contribution against the [debtor]."). In other words, when the banks in Frenville initiated their suit against the

14

debtor's accounting firm, the firm had a cause of action against the debtor by operation of New York law.

This case is, indeed, analogous to the <u>Frenville</u> scenario. Once TER Development initiated its suit against PPG alleging a FDUPTA violation, PPG had a right to file a claim for FDUPTA fees. As Florida law requires, once a FDUPTA suit is filed, a party wishing to assert a claim for attorneys' fees must plead such claim within 30 days. Thus, once TER Development alleged a FDUTPA violation, it exposed itself to § 501.2105 liability. PPG thereafter "staked its claim" by affirmatively pleading its claim for attorneys' fees and, most certainly, by obtaining summary judgment on the FDUPTA claim. In so doing, PPG established an "'interest' cognizable as a contingent claim" by creating a legal relationship with TER Development. <u>Schweitzer v. Consolidated Rail Corp.</u>, 758 F.2d 936, 943 (3d Cir.), <u>cert. denied sub nom.</u>, <u>Reading Co. v. Schweitzer</u> 474 U.S. 864 (1985). PPG positioned itself to collect attorneys' fees under FDUPTA depending upon the ultimate outcome of the entire case.

Appellants strongly argue that there must be a final, net judgment entered as to all claims in their favor (not just on the FDUTPA claim) before they have a "claim" or cause of action under the Bankruptcy Code. They argue that because a final net judgment is an element of a <u>claim</u> for attorneys' fees pursuant to Florida Statute § 501.2105, its cause of action is not yet ripe. This Court disagrees. It is not logical to hold in this instance

that the imposition of a final, net judgment is an element of a § 501.2105 claim for fees.  Because PPG had properly pled a § 505.2105 recovery claim, and had secured a judgment in its favor under FDUPTA, PPG satisfied the two, <u>essential</u> elements necessary to stake a claim for recovery of fees.  See <u>CrossPointe, LLC</u>, 2007 WL 1192021, at *4 (citing § 501.2105, Florida Statutes; <u>M.G.B. Homes, Inc. v. Ameron Homes, Inc.</u>, 30 F.3d 113, 114 (11th Cir. 1994))("FDUTPA provides that the prevailing party in a civil litigation involving a FDUTPA violation <u>may receive</u> reasonable attorneys' fees and costs from the non-prevailing party after final judgment in the trial court and after all appeals have been exhausted.")(emphasis added).

   PPG's argument mistakes the right to <u>receive</u> payment with the "right to payment" necessary to maintain a claim under the Bankruptcy Code.  While it is true that PPG will need to be declared the prevailing party to receive FDUPTA attorneys fees, at this stage, where PPG was awarded judgment in its favor on the FDUPTA claim, PPG's right to payment under FDUPTA is now contingent on future events.  Without pleading the claim for attorneys' fees, and obtaining judgment in its favor under FDUPTA, PPG could not, as a matter of law, pursue its claim for attorneys fees under FDUPTA.

   As to whether or not PPG would ultimately recover fees, this determination rests upon the occurrence of future events:  the securing of a "net judgment" by PPG in the entire case,

16

exhaustion of all appeals (if any), and a court's exercise of discretion awarding PPG "prevailing party" status. See CrossPointe, LLC, 2007 WL 1192021, at *4 ("The awarding of attorneys' fees under FDUTPA is not mandatory, and the entitlement to such an award is determined in the sound discretion of the trial court."). Moreover, the declaration of a "prevailing party" rests with the discretion of the trial court upon consideration of several, equitable factors:

> (1) the scope and history of the litigation;
> 
> (2) the ability of the opposing party to satisfy an award of fees;
> 
> (3) whether an award of fees against the opposing party would deter others from acting in similar circumstances;
> 
> (4) the merits of the respective positions-including the degree of the opposing party's culpability or bad faith;
> 
> (5) whether the claim brought was not in subjective bad faith but frivolous, unreasonable, groundless;
> 
> (6) whether the defense raised a defense mainly to frustrate or stall;
> 
> (7) whether the claim brought was to resolve a significant legal question under FDUTPA law.

Humane Soc. of Broward County, Inc., 951 So.2d at 971-72.

Appellants confront the discretionary nature of a FDUPTA attorneys' fees award, contending that it obviously illustrates that their right to payment has not yet accrued. This argument fails, however, because Congress included within the definition of a claim "contingent" claims, i.e., those claims where the right to payment is predicated on some future event. Here, the future event(s) are the securing of a net judgment and the

17

court's ultimate discretion to award PPG fees.[5]  Certainly because PPG secured a judgment in its favor as to the FDUPTA claim, PPG has a claim for payment of fees, although that payment depends upon a court's weighing of various factors in deciding whether or not to award fees.

---

[5] Appellants rely upon several cases which the Court finds unpersuasive.  Appellants' rely on In re Berlingeri, 246 B.R. 196 (Bankr. D.N.J. 2000) where the court, interpreting New Jersey's alimony and maintenance statute, held that claims for equitable distribution did not arise until the judgment of divorce was granted.  Id. at 199-200.  The court relied on the New Jersey Supreme Court's directive that "[b]y the plain terms of the statute," the right to equitable distribution of marital property arises upon entry of the judgment of divorce."  Id. at 199 (quoting Carr v. Carr, 120 N.J. 336, 342, 576 A.2d 872, 875 (1990).  This Court does not have the benefit of such a clear statement of state law.  More importantly, unlike the debtor in Berlingeri, who argued that a contingent "right to payment" was established upon filing for divorce pending the entry of judgment, PPG did more than simply plead a "right to payment" contingent on the entry of a judgment--PPG obtained a judgment in its favor on the FDUPTA claim.

For the same reason, Appellant's reliance on In re Howell, 311 B.R. 173, 179 (Bankr. D.N.J. 2004), which applied the reasoning of Berlingeri to conclude that a spouse seeking equitable distribution was not barred by the automatic stay, is misplaced.  Again, PPG has gone beyond merely pleading its claim for attorneys' fees, PPG has obtained a favorable judgment on the FDUPTA claim.

Relying on Big Tomato v. Tasty Concepts, Inc., 972 F.Supp. 662 (S.D. Fla. 1997), PPG further argues "that the only way to pursue a right to fees under FDUPTA is by filing a motion at the conclusion of the underlying case, after the entry of a final judgment," meaning that a FDUPTA claim for fees arises only upon the entry of a final judgment. Appellants' Br. at 21.  However, the court in Big Tomato simply denied the defendants' motion for FDUPTA attorneys' fees without prejudice pending entry of a final judgment and exhaustion of all appeals, as it was required to do under Florida law.  There, as here, the defendants held a contingent claim for fees dependent on the occurrence of future events, i.e., the securing of a net judgment, the exhaustion of any appeals and the exercise of the court's ultimate discretion to award fees.

18

Throughout this appeal the Debtors have maintained that once TER Development requested FDUTPA fees against PPG, PPG had a cause of action for fees and, thus, a pre-petition claim under Frenville. The Court is not so convinced. Frenville speaks of both a "cause of action" and a "claim." See 744 F.2d at 336 ("At first glance, A&B might be thought to have had an unliquidated, contingent, unmatured and disputed claim pre-petition. While all these adjectives describe A&B's cause of action against the Frenvilles, the threshold requirement of a claim must first be met--there must be a right to payment."). The distinction between the two, if any, however, was not relevant to the Court's decision in Frenville because both had occurred post-petition. This Court need not resolve this issue because it is clear that once PPG obtained a favorable judgment as to the FDUPTA claim, PPG positioned itself to seek recovery of its fees. Whether or not PPG would ultimately receive an award, should it press its claim, would be a matter left to the discretion of the trial court and the occurrence of future events. In this Court's view, this is a classic contingent claim barred by the automatic stay of the Bankruptcy Code.

### III. CONCLUSION

Accordingly, for the foregoing reasons, this Court finds that the Bankruptcy Court correctly held that the Appellants' claim for FDUTPA fees was a pre-petition claim barred by the

automatic stay.  An Order consistent with this Opinion will issue.

s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge

Dated: January 28, 2010

20